Ingram v. The State.

## INGRAM vs. THE STATE.

[INDICTMENT FOR DISTILLATION OF GRAIN WITHOUT LICENSE.]

1. *Constitutionality of law prohibiting distillation of grain into liquor.*—The act to prohibit the distillation of grain into spirituous liquors except under the authority and direction of the governor, approved December 8, 1862, (Session Acts, 1862-63, p. 43,) is not violative of any constitutional provision, either as depriving the citizen of his property without due course of law, or as conferring legislative power on the governor.

2. *General demurrer to indictment containing good and bad counts.*—A general demurrer to an indictment containing several counts, one of which is good, may be overruled entirely.

3. *Evidence of distinct offenses not admissible in aggravation of fine.*—On the trial of an indictment under this statute, evidence of distinct acts not charged in the indictment, but similar to the acts which are charged, is not admissible for the prosecution, "in aggravation of the fine."

FROM the Circuit Court of Talladega.

Tried before the Hon. JOHN T. HEFLIN.

THE indictment in this case was found on the 22d May, 1863, and contained three counts, the first of which was in the following words : "The grand jury for said county charge, that before the finding of this indictment, and since the 19th day of December, 1862, Gabriel C. Ingram, not being employed or authorized by the governor of the State of Alabama to distil, or convert into spirituous or intoxicating liquor, any grain, or the product of any grain, did distil and convert into whiskey, it being a spirituous liquor, a grain called Indian corn, or corn meal (the product of such grain), in contravention of the statute in such cases made and provided, approved the 8th December, 1862." The defendant demurred to the indictment, but the court overruled his demurrer ; and he then pleaded not guilty, on which plea issue was joined.

"On the trial," as the bill of exceptions states, "the solicitor for the State introduced and examined a witness to

sustain the indictment, covering the whole period between the time when the statute took effect and the finding of the indictment in this case; and then told the jury, and procured the court to instruct the jury, that a verdict and conviction could only be had on proof of an offense committed on the 22d February, 1863; and that they might look to the balance of the testimony in aggravation of the fine, but for no other purpose; to all which the defendant excepted."

L. E. PARSONS, for the prisoner.

M. A. BALDWIN, Attorney-General, *contra.*

R. W. WALKER, J.—By the 1st section of the act "to prohibit the distillation of grain in the State of Alabama, except under the direction and authority of the governor," approved December 8, 1862, it was enacted, "that, for the purpose of suppressing the evils resulting from the distillation of grain, as it hath heretofore been carried on, of securing the proper police of the country, and of promoting the common defense and general welfare, it shall not be lawful for any person, during the existing war, to distil, or convert into spirituous or intoxicating liquor, any grain, or the product of any grain, unless hereafter employed or authorized by the governor to do so." By the second section it is made the duty of the governor, "under such rules and regulations as he may prescribe, to cause such an amount of grain to be distilled, or converted into alcohol or spirituous liquors, as in his judgment is consistent with the common defense and general welfare;" and he is empowered to make contracts, and appoint agents to carry out the law, and to cause the alcohol or spirituous liquor made under its provisions to be disposed of in such manner, and for such purposes, as he deems best calculated to effectuate the object of the act. The third section provides, that, "if any person shall distil, or convert into spirituous or intoxicating liquor of any kind, any grain, or the product of any grain, in contravention of the provisions of this act," he shall be subject to indictment, and, on conviction, be fined not less than $500, nor more than $20,000.—Acts, 1862, p. 43.

The appellant was convicted of distilling grain in viola-
tion of this act; and one of the grounds on which he now
seeks a reversal of the judgment of conviction is, that the
legislature had not the constitutional power to enact this
law.   The limits of the legislative power of the State gov-
ernment were very carefully considered by us in the case of
*Dorman v. State,* (34 Ala. 216,) and we there laid down the
following, as the rule by which the unconstitutionality of an
act of the legislature is to be determined : "The objector
assumes the burden of showing, either that it is an exer-
cise of authority not legislative in its nature, or that it is
inconsistent with some other provision of the Confederate
or State constitution"—p. 231.

On behalf of the appellant it is insisted, that the act
under which he was indicted is in conflict with the 10th
section of the declaration of rights, by which it is provided,
that no person " shall be deprived of life, liberty, or prop-
erty, but by due course of law."   Does an act of the
legislature, which simply makes it unlawful for the citizen
to distil his grain into spirituous or intoxicating liquor,
deprive him of his property in such grain ?   It seems to us
that the question is answered by the mere statement of it.
The act does not contemplate a seizure of the property, or
any direct appropriation of it, or dispossession of the owner.
It does not affect the owner's title, or his right of posses-
sion, or even his right to use, except in a particular mode,
and for a specified purpose.   " The right to use or dispose
of property as an absolute, unqualified, indefeasible right,
is one which has never existed since governments were
organized among men.   It is a right which has always been
held subject to such regulations as, in the judgment of the
law-making power, the interests of society required should
be imposed upon it."—20 Barb. 179, 232 ; *ib.* 603.

In every well-ordered State, property is held subject to
the tacit condition, that it shall not be so used as to injure
the equal rights of others, or the interests of the commu-
nity.   Such injurious uses of property may be prevented
by such regulations and restraints as the legislature may
think proper to impose ; and, in the establishment of these,

the only limits to the legislative authority, which we can recognize, are those which are declared by the written fundamental law.—*Dorman v. State*, 34 Ala. 243, and authorities cited. It seems a solecism to say, that a law which prohibits a single specific use of property, because such use is supposed by the law-making power to be injurious to the public welfare, but which does not disturb the owner's title to, or possession of, or right to use such property, in any other mode than the single one prohibited, does, in the sense of the constitution, *deprive* the owner of his property without due course of law. It would be singular, indeed, if, in a season of general scarcity, or in the midst of a war, involving the life of the State, the legislature had no power to prevent or limit the conversion of grain, the chief food of man and the domestic animals, into spirituous liquor. In the circumstances supposed, the unlimited right of all persons to make this particular use of the property in question, might work incalculable injury to the country, by increasing the scarcity of food among the people, and by diminishing the ability of the government to subsist the armies necessary for successful defense against foreign invasion; to say nothing of the pernicious influence upon public morality and the discipline of armies, likely to result from the multiplication of distilleries and an excessive supply of intoxicating liquors.

Our conclusion is, that the act under consideration was a legitimate exercise of the undoubted power of the legislature to limit and regulate the uses to which property may be applied. The objection that the act is invalid, because it transfers legislative power to the governor, is not well taken. The governor is simply the agent, appointed by the legislature to carry out the provisions of the law. He is, it is true, intrusted with a large discretion in the exercise of the powers conferred upon him; but we are unable to see upon what principle this feature of the law can be held to invalidate it.

[2.] The demurrer interposed was a general demurrer to the entire indictment, and not to each count separately. As

the first count is clearly good, it is not necessary for us to consider the sufficiency of the others. '

[3.] The familiar rule, which requires that evidence must be confined to the point in issue, applies as well to criminal as to civil cases. It 'is said, indeed, that "in criminal proceedings the necessity is stronger, if possible, than in civil, of strictly enforcing this rule; for, where a prisoner is charged with an offense, it is of the utmost importance to him that the facts laid before the jury should consist exclusively of the transaction which forms the subject of the indictment, which alone he can be expected to come prepared to answer."—2 Russell on Crimes, 272. Accordingly, it is well settled, as a general proposition, that upon the trial of an indictment for one offense, evidence of another distinct offense, though of the same nature, is inadmissible. Thus' an admission by the prisoner, that he has, at another time' committed an offense similar to that with which he is charged, and that he has a tendency to perpetrate such crimes, cannot be received.—1 Phill. Ev. 477. So, in treason, no overt act, amounting to a distinct, independent charge, though falling under the same head of treason, can be given in evidence, unless it be either expressly laid in the indictment, or conduce to the proof of some overt acts which are laid.—Foster's Cr. Law, 245; *Vaughn's case*, 13 How. St. Tr. 485. On the trial of an indictment for larceny of a watch, evidence of another larceny of a clock by the prisoner, at another time, is inadmissible for any purpose. *Walker v. Commonwealth*, 1 Leigh, 574. So, on the trial of an indictment containing a single count, for one offense of assault and battery, and resisting an officer in the execution of process, the prosecution, after proving an assault and one act of resistance, cannot give evidence of a similar offense committed at another time.—*People v. Hopson*, 1 Denio, 574. In like manner, it has been held, that on the trial of an indictment for selling liquor without a license, the prosecution can only give evidence of as many distinct offenses as there are counts in the indictment.—*Hodgman v. People*, 4 Denio, 235; also, *State v. Wisdom*, 8 Porter, 511; *Elam v. State*, 26 Ala. 48; *Cochran v. State*, 30 Ala. 542; *Hughes v. State*, 35 Ala. 351; *Cole v. Commonwealth*,

5 Grattan, 696; Wharton's Cr. L. § § 631–5, 647–51; *People v. Adams*, 17 Wend! 475.

The rule which excludes evidence of other criminal acts, on the trial of a particular criminal issue, is, it is true, not without limitations or exceptions. Thus, when felonies are so connected together as to form part of one entire transaction, evidence of one may be given, to show the character of the other.—*Rex v. Ellis*, 6 B. & C. 145; *Rex v. Birdseye*, C. &. P. 386; 2 Russ. Cr. 774–6; *Rex v. Long*, 6 C. & P. 179; Wharton's Criminal L. § 649. Where it becomes necessary to prove a guilty knowledge on the part of the prisoner, evidence of other offenses committed by him, though not charged in the indictment, is admissible for that purpose. It is upon this principle that, on the trial of an indictment for uttering a forged bank-note, knowing it to be forged, evidence may be given of other forged notes having been uttered by the prisoner, in order to show his knowledge of the forgery.—*Rex v. Whiley*, 2 Leach's C. C. 983; 2 Russ. Cr. 777; *Tharp v. State*, 15 Ala. 749. If it be material to show the intent, with which the act charged was done, evidence may be given of a distinct offense not laid in the indictment. Hence, upon an indictment for malicious shooting, if it be questionable whether the shooting was by accident or design, proof may be given that the prisoner, at another time, intentionally shot at the same person.—*Rex v. Voke*, Russ. & R. 531. So, in an indictment for adultery, previous improper familiarities may be proved, to show the *quo animo.*—*Lawson v. State*, 20 Ala. 66; Wharton's Cr. L. § § 649, 2653.

In like manner, evidence of a distinct offense is competent, for the purpose of proving the existence of a motive to commit the crime in question, in cases where there is some apparent connection or relation between the imputed motive and the felony charged.—*People v. Wood*, 3 Parker's Cr. R. 681; 2 Russell on Crimes, 778. In cases where a question is raised as to the identity of the person committing the offense, or of the instrument used, evidence of other offenses is sometimes admitted for the purpose of establishing such identity.—2 Russ. Cr. 779; Taylor's Evi. § 250. It sometimes happens, too, that from the nature of

the offense charged, it is impossible to confine the evidence to proof of a single transaction. In offenses of which the gist is that the defendant has carried on a business, or sustained a character as a common utterer of counterfeit coin, common barratror, common seller of spirituous liquors, or the like, or where a combination or conspiracy is alleged, great latitude is allowed in giving in evidence various acts of the defendant; for, in cases of this character, cumulative instances are necessary to prove the offense.—2 Russ. Cr. 780 ; 1 Leading Cr. Cases, 190. It is upon this principle that the following cases rest : *Rex v. Roberts*, 1 Camp. 399; *Commonwealth v. Turner*, 3 Metc. 19 ; *Commonwealth v. Eastman*, 1 Cushing, 189 ; *Chambers v. State*, 26 Ala. 59 ; *Commonwealth v. Hopkins*, 2 Dana, 419. See, also, *Commonwealth v. Elwell*, 1 Gray, 463 ; *ib.* 466, 490.

But evidence of a distinct offense, though of the same nature as the one charged, seems to be limited to the exceptions above mentioned; and where such evidence is not offered to prove *scienter*, or intent, or motive, or to make out the *res gesta*, or to establish identity, it is inadmissible.

By the statute under which the appellant is prosecuted, it is not the carrying on of the business of distilling, or the being a common distiller, which is made indictable. Each act of distillation is a distinct offense, and the subject of a separate indictment; and upon the principles above laid down, it would seem that the State can only give evidence of as many distinct acts of distillation as there are counts in the indictment. This, however, is not precisely the question presented in the present case. The bill of exceptions is somewhat obscure ; but it sufficiently appears that the court permitted the State to prove acts of distillation not charged in the indictment, and instructed the jury that they might look to the evidence of such acts, "in aggravation of the fine, but for no other purpose." In giving this charge the court clearly erred. It is said that, "in giving evidence of matter in aggravation, the distinction is, that where the aggravating matter is the immediate consequence of the offense for which the defendant is on trial, it may be shown; but, if it is a distinct crime, not necessarily connected with the offense charged in the indictment, it cannot be received."

*Baker v. State,* 4 Ark. 61.   The decision in *Skains v. State,*
21 Ala. 218 (222), is express to the point, that evidence of
distinct offenses, not charged in the indictment, cannot be
looked to in aggravation of the fine.

Reversed and remanded.