30 So.2d 31

## BRASHER v. STATE.

### 6 Div. 489.

Supreme Court of Alabama.
April 10, 1947.

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

Ben F. Ray and G. J. Prosch, both of Birmingham, for appellant.

LAWSON, Justice.

Fayette Brasher was convicted of having carnal knowledge of a girl over twelve but under sixteen years of age. § 399, Title 14, Code 1940.

Brasher pleaded not guilty to the indictment and by the testimony of his wife attempted to prove an alibi. The girl, Elsie Louise Golden, who was thirteen years old at the time the offense was alleged to have been committed, positively identified Brasher as the man who carnally knew her. It appears that she was well-developed for her age.

Upon the trial of the case the trial court permitted the State to show: (1) By a little five-year-old girl that Brasher performed degenerate and perverted sexual acts with her approximately four months prior to the date of his alleged illegal relation with the thirteen-year-old girl. (2) By a physician who examined the little five-year-old girl about four days after her alleged mistreatment by Brasher that she was then suffering from chronic gonorrhea and that it was possible for gonorrhea to reach a chronic stage although a person had been originally infected with the germ only three or four days previously. There was no evidence that Brasher had been infected with such disease at the time it is claimed he mistreated the little five-year-old girl. All of such evidence was admitted solely as going to prove identity.

Brasher appealed to the Court of Appeals, which court reversed the judgment of conviction on the ground that the trial court committed error in admitting in evidence the testimony of the physician relative to the little girl being infected with gonorrhea. The State of Alabama, by its Attorney General, here contends that in so holding the Court of Appeals has erred and has filed a petition for writ of certiorari to review and revise the decision of the Court of Appeals in that regard.

However, the Court of Appeals held that the trial court correctly permitted the State to show the fact that Brasher had committed the alleged acts of perversion and degeneracy upon the little five-year-old girl. Consequently, Brasher has also filed a petition for writ of certiorari to review and revise the decision of the Court of Appeals to the extent of that holding.

We will first consider the question as to whether any of the evidence relating to the

little five-year-old girl should have been admitted.

It appears from the opinion of the Court of Appeals that that court considered such evidence admissible because Brasher was on trial for a sex offense against a thirteen-year-old girl, which offense under his plea he denied having committed. Hence the identity of the perpetrator of the crime was in issue and the Court of Appeals considered the evidence as to Brasher's relations with the little five-year-old girl as indicating that it was likely that Brasher was the man who committed the crime charged, because it showed that he was a person "tainted with traits of sexual depravity," a man "afflicted with general base desires for young girls, and therefore of sufficient probative value to justify its admission in this prosecution as identifying the accused as a man of such inclinations." Reliance was had upon the case of Wilkins v. State, 29 Ala.App. 349, 197 So. 75, certiorari denied, 240 Ala. 52, 197 So. 81. The effect of such holding is that the evidence as to defendant's relations with the little five-year-old girl was admissible for the purpose of identification because it showed he was a man with a disposition, propensity, or inclination to commit such offenses with little girls.

It is difficult to find any other possible theory upon which such evidence could have been held admissible. In the instant case Brasher is charged with the commission of a normal sexual act, illegal because of the age of the girl. The evidence as to his relationship with the five-year-old girl showed an abnormal sexual act, an act of perversion and depravity. The two acts were separate and distinct. They were in no sense intermixed or blended, one with the other, or connected so as to form parts of the same criminal transaction. The act alleged to have been committed on the little five-year-old girl was certainly not of the res gestae of the offense for which he was being tried. There was no similarity in the manner, location or circumstances in which the two offenses were committed such as to support a logical inference that the same man committed both acts.

The main ground upon which Brasher bases his contention that such evidence should have been excluded is that it was an attempt to prove a separate and distinct offense. This question of the admissibility of evidence touching other crimes perpetrated by a defendant on trial for a specified offense has been the theme of much discussion by courts and text writers. Some of them approach the solution of the problem with the idea that except when it shows merely criminal disposition, evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. People v. Peete, Cal. Sup., 169 P.2d 924; Stone, The Rule of Exclusion of Similar Fact Evidence: England, 46 Harv.L.Rev. 954; Stone, The Rule of Exclusion of Similar Fact Evidence: America, 51 Harv.L.Rev. 988. Such is the effect of Rule 311 of the American Law Institute's Model Code of Evidence, which is as follows: "Subject to Rule 306, evidence that a person committed a crime or civil wrong on a specified occasion is inadmissible as tending to prove that he committed a crime or civil wrong on another occasion if, but only if, the evidence is relevant solely as tending to prove his disposition to commit such a crime or civil wrong or to commit crimes or civil wrongs generally."

But this court over a long period of years has approached the solution of the question on the theory that there is a rule against the admissibility of evidence concerning prior offenses, but that to such rule there are well-recognized exceptions. Ingram v. State, 39 Ala. 247, 84 Am.Dec. 782; Gassenheimer v. State, 52 Ala. 313; Johnson v. State, 242 Ala. 278, 5 So.2d 632. The reason for such so-called rule of exclusion lies no doubt in the fact that proof of another and distinct offense has ordinarily no tendency to establish the offense charged.

Among the exceptions to the so-called rule of exclusion, recognized in this state, is that where a question is raised as to the identity of the person committing the offense, evidence of other offenses is sometimes admitted for the purpose of establishing such identity. Ingram v. State, supra; Gassenheimer v. State, supra; Johnson v. State, supra.

The rule in this jurisdiction, as it is generally, is that in some sexual cases,

such as fornication, statutory rape and sodomy, other similar acts between the same parties are admissible as tending to sustain the principal charge by showing the relation and intimacy of the parties. Lawson and Swinney v. State, 20 Ala. 65, 56 Am.Dec. 182; Harrison v. State, 235 Ala. 1, 178 So. 458; Brown v. State, 32 Ala.App. 131, 22 So.2d 445. But those cases are not here controlling because of the fact that here different parties were involved in the two offenses and there is no similarity in the acts alleged to have been committed other than that they were both of a sexual nature.

We have found no case from this jurisdiction, and none has been called to our attention, which answers the exact question here presented, which is: Can the prosecution introduce evidence of other offenses committed by the accused with third persons for the purpose of identifying him as the person who committed the specific crime charged, when such evidence does nothing more than show the accused's inclination or disposition to commit that type of crime or to show his sexual depravity?

The cases of Wilder v. State, 30 Ala. App. 107, 1 So.2d 317, and Johnson v. State, supra, are cases where evidence of similar offenses was held admissible for the purpose of proving identity, but such evidence was not held admissible on the ground that it tended to show the defendant's disposition or inclination to commit the particular type of crime for which he was on trial, but because of similarity in circumstances. In the Wilder case, supra, it was said: "Where the crime has been committed by some novel or extraordinary means or in a peculiar or unusual manner, evidence of recent similar acts or crimes by the accused committed by the same means or in the same manner are provable to identify the accused as an inference from the similarity of method." (At page 109 of 30 Ala.App., at page 319 of 1 So.2d)

In Johnson v. State, supra, the evidence as to other offenses showed that they were committed in much the same manner as was the offense for which the defendant was on trial. This court in holding such evidence admissible did not base its conclu-

sion on the Wilkins case, supra, but cited it only as presenting a somewhat analogous situation. We quote from Johnson v. State, supra, as follows [242 Ala. 278, 5 So.2d 635]: "The case of Wilkins v. State, 29 Ala.App. 349, 197 So. 75, bears some analogy. And in Wilder v. State [30 Ala.App. 107], 1 So.2d 317, the Court of Appeals had a similar question here presented. See, also, the recent United States Supreme Court case of Lisenba v. People of State of California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166. The other offenses here shown were all of similar character, committed within the same territory and all within a period of eighteen days. It is to be noted also that in each instance the victim was a white woman, which bears significance in view of defendant's remark concerning white women as testified to by Mrs. Sloan, hereinafter set out. The only issue was one of identification, and under the principle of the above-noted authorities this proof was properly admitted."

The case of Wilkins v. State, supra, is cited by the Court of Appeals and is relied upon by the State. But we do not think that case here controlling for the reason that here we are dealing solely with identity, whereas in the Wilkins case the evidence there under consideration was held properly admitted because "this prior conduct bore directly on what his *intent* might be when he assaulted the prosecuting witness and the jury was legally entitled to consider it in this connection when making up its verdict." (At page 355 of 29 Ala. App., at page 80 of 197 So.) (Emphasis supplied) The Court of Appeals rested its conclusion in the Wilkins case to a large degree on the construction which it placed on § 357(2), Wigmore on Evidence, 2d Ed., p. 664, which related solely to what is termed the "intent principle."

The paragraph in Wigmore next following that quoted by the Court of Appeals in the Wilkins case, *supra*, discloses that eminent authority's statement of the law as to admissibility of evidence of other offenses for the purpose of showing identity. We quote: "The *Design* or *Plan* principle *(ante,* § 304) requires that the former act

or acts should indicate, by common features, a plan or design which tends to show that it was carried out by doing the act charged. Here it is obvious that there is much room for difference of opinion in a given case. The committing of a single previous rape, or rape-attempt, upon another woman may not in itself indicate such a design,—a view carefully examined in the following leading case: * * * Nevertheless, a single previous act, even upon another woman, *may,* with other circumstances, give strong indication of a design (not a disposition) to rape; and a previous act of the sort upon the same woman ought in itself usually be regarded as indicating such a design." (§ 357[3])

In view of the distinction above set out and the general rule prevailing in most of the states, we are not willing to extend the rule in the Wilkins case so as to permit the State to introduce evidence of other offenses committed by the accused with third persons for the purpose of identification when such evidence merely tends to show disposition, inclination, propensity or depravity.

Such testimony in its final analysis shows nothing more than that the defendant's character is bad or that he is morally deficient. The prosecution cannot attack the character of the defendant, unless he first puts that in issue by offering evidence of his good character. It cannot show the defendant's bad character by showing particular acts. It follows, therefore, that for the purpose of identification, the prosecution should not be permitted to give in evidence other crimes of the defendant, committed on or with other persons, unless they are so connected by circumstances with the particular crime in issue as that the proof of one fact with its circumstances has some bearing upon the issue on trial other than to show the defendant's bad character or moral delinquency. State v. Flath, 61 N.D. 342, 237 N.W. 792.

In the case of State v. Start, 65 Or. 178, 132 P. 512, 46 L.R.A.,N.S., 266, the defendant was convicted of sodomy. The State was permitted to call several witnesses, who testified that they themselves at other times had participated with the defendant in similar acts. In reversing the judgment of conviction, the Supreme Court of Oregon said:

"To admit testimony that the defendant at other times and places, and under wholly disconnected circumstances, had committed like offenses with parties not named in the indictment, all for the purpose of making it appear that the accused has the bent of mind adapted to such actions, would cloud the issue and confuse the jury.

\* \* \* \* \*

"The defendant in this criminal prosecution had the right to 'demand the nature and cause of the accusation against him and to have the copy thereof.' Oregon Constitution, Art. 1, § 11. Here, however, he was in real truth brought to trial upon some half-dozen charges, while the indictment gave him information of but one offense. Logically, under the rule announced by the court at the trial, it could make no difference in the principle if the defendant had been acquitted or convicted of the other offenses. They could be still put in evidence to show a criminal propensity on his part, and he compelled to again defend against them. In a large degree the effect of such a proceeding is to 'shut the gates of mercy on mankind,' so that if but once an individual suffers a lapse of virtue, thenceforward the law will pursue him with the vindictive zeal of a Javert, using a single accusation to wreak upon him the cumulative vengeance of a general inquisition." (At pages 191, 192 of 65 Or., at page 516 of 132 P.)

In Hall v. United States, 9 Cir., 235 F. 869, it appears that the accused was convicted of an unlawful assault upon the person of a nine-year-old girl. The government introduced the testimony of another little girl to the effect that the defendant previously had committed a similar act on her. It was held: "It is too plain, however, that proof of such collateral matter tends to produce the belief that defendant is a person of depraved moral character, and is highly prejudicial to the defendant on trial before a jury. The law, in presuming the defendant innocent until his guilt

of the offense charged is proved, will not allow the government to prove evidence of defendant's bad or immoral character until defendant has put his character in issue by evidence in his behalf." (At page 871 of 235 F.)

In Porath v. State, 90 Wis. 527, 63 N.W. 1061, 48 Am.St.Rep. 954, the defendant was convicted of the crime of incest. The State was permitted to prove that Porath had improper relations with another woman, Bertha Baker. In holding such evidence improperly admitted, it was said: "It cannot, we think, be maintained that the subsequent improper relations of the defendant with Bertha Baker would be competent evidence to show that he had committed the offense of rape or incest, for which he was on trial, or to show that the defendant had a tendency even to commit such crimes. Evidence of what occurred in these respects subsequently, at another time or place, with another party, would certainly not be competent evidence." (At page 1065 of 63 N.W.)

One Letoile was convicted of the crime of incest committed with his eldest daughter. The State proved that Letoile had committed a similar act with another daughter. His conviction was reversed in the case of People v. Letoile, 31 Cal.App. 166, 159 P. 1057, wherein it is said: "Evidence was thus placed before the jury not only by the prosecuting witness that the defendant had committed the crime of incest with her, but also by the daughter Mary that defendant had committed a like crime with her. Unless this was corroboration of Lucy's testimony respecting the offense charged in this action, there is no corroboration in the record. The jury may have believed Lucy's testimony as to the defendant's acts, but that those acts were done with her consent, and that she was an accomplice therein; and, in that event, their verdict was necessarily based also upon the testimony of Mary which tended to show the defendant's disposition to commit that kind of a crime by showing that he had committed such a crime with a person other than the one named in the information. The decisions in this state are uniform to the effect that such evidence in

prosecutions for crimes of this class is not admissible." To like effect is the case of Wentz v. State, 159 Md. 161, 150 A. 278.

In People v. Dean, 253 Mich. 434, 235 N.W. 211, the defendant was convicted of an act of gross indecency with a seventeen-year-old boy. The State was permitted to prove the previous commissions of similar acts by the defendant with several other boys. In reversing the judgment of conviction, the Supreme Court of Michigan said:

"The only apparent reasoning on which this testimony can be said to be relevant is that it tends to establish a disposition on the part of the defendant to commit such an act. If admissible for that purpose, other larcenies might be proven in a case where a man was charged with that offense, and other assaults, bigamies, rapes, etc., in like cases.

"That the defendant committed similar offenses with other boys has no direct tendency to show that he committed that with which he is charged, which had no connection with them. By the admission of such testimony, he is, in effect, called upon to defend against charges, without notice that he would be required to meet them. Where the charge involves conduct with the same person, as in the Swift case, he may, on the preliminary examination, elicit the fact that such testimony will be relied upon by the prosecution and be prepared to meet it as best he may.

"The only purpose of submitting such proof in this case was to render it more probable in the minds of the jury that the defendant committed the offense with which he is charged, and on reason as well as authorities it was not admissible for that purpose." (At page 212 of 235 N.W.)

To like effect is the case of State v. Flath, supra.

The Court of Appeals in support of its conclusion that the evidence here under consideration is admissible relies upon the case of Barnett v. State, 104 Ohio St. 298, 135 N.E. 647, 27 A.L.R. 351, but careful consideration of this case leads us to the conclusion that the evidence there under consideration was held admissible because

it showed similarity as to circumstances and manner in which the offenses were committed, as appears in the following quotation from the opinion in that case: "How can it be said that the lascivious, bestial disposition of the male person who was habitually committing similar crimes upon little girls in Toledo and vicinity near the time charged in this indictment did not, with reason and in common knowledge and experience, point strongly toward the defendant as being the person who committed the offense charged in the indictment. It was committed by someone with an automobile bearing a certain number, absolutely identified, operating in a manner and by means substantially identical, at the same time of day, upon the pupils of a certain school and neighborhood, taken to a certain unfrequented place in or about Toledo, and repeatedly exhibiting his bestiality in his conduct toward these children. What we know as men, having common knowledge, or, if you please, scientific knowledge, of these sexual perverts, we cannot ignore as judges." (At page 310 of 104 Ohio St., at page 651 of 135 N.E.)

We are of the opinion and so hold that none of the testimony introduced by the State relative to Brasher's alleged mistreatment of the little five-year-old girl should have been admitted. It follows that the Court of Appeals correctly held that the testimony of the physician as to the little girl being infected with gonorrhea was improperly admitted. But that court erred in upholding the action of the trial court as to the evidence tending to show that Brasher previously had committed acts of perversion or degeneracy on the little five-year-old girl.

While we cannot agree with the opinion of the Court of Appeals as above indicated, we are in accord with the holding of that court that the judgment of conviction should be reversed.

It follows, therefore, that the judgment of the Court of Appeals is affirmed.

All the Justices concur except SIMPSON, J., who concurs in the result only.