This case is here following an appeal from the conviction of the petitioner, Lee Killough, for violation of § 13A-8-3, Code 1975. The Court of Criminal Appeals affirmed the conviction. We granted a writ of certiorari and now reverse the decision of the appellate court.
It is necessary only to review the facts relevant to the dispositive issue. Hurricane Frederic struck and devastated the coastal counties of Alabama on 12 and 13 September 1979. At that time, the State Department of Civil Defense hired Lee Killough as Director of the Disaster Relief Housing Office. His responsibilities included securing temporary housing for those victimized by the storm as well as administering federal funds for other disaster relief.
The disaster relief program was funded by the federal government. Funds channeled through the Federal Emergency Management Agency (F.E.M.A.) to the State Department of Civil Defense were placed in a bank account numbered 303102 to be used exclusively for disaster relief.
On 15 October 1979, the Disaster Housing Office obtained, with funds from account 303102, a Morgan Building Systems portable building. The State contends that Killough confederated with, and aided, his Deputy Housing Director, one Toofie Deep, in illicitly appropriating the building for Deep's personal use and possession.
The pertinent portion of the indictment charging Killough reads as follows:
 "Lee Killough . . . did on or about January 5, 1980, obtain or exert unauthorized control over, a Morgan Portable Building . . . the property of the State of Alabama . . . with the intent to deprive the owner of said property, in violation of Section 13A-8-3 of the Code of Alabama, 1975."
During the course of the trial, two witnesses, Eddie Foster and James Meredith, testified on behalf of the State. Their testimony linked the appellant to a number of alleged criminal conspiracies not charged in the indictment. Specifically, their testimony indicated Killough had rigged the bidding on government contracts for tow-backs of temporary shelters and solicited both kickbacks and bribes in his administration of such contracts. These were not offenses named in the indictment against Killough. The quantum and detail of the evidence proffered by the State regarding *Page 335 
these uncharged acts of misconduct can only be characterized as extensive.
The dispositive issue is whether the trial court erred by admitting uncharged acts of misconduct. It is the appellant's contention that evidence of bid-rigging, bribes, and kickbacks bear little or no relationship to the crime charged, and therefore it was reversible error to allow its admission. We agree.
It is well settled law that evidence of separate and distinct criminal acts are inadmissible at the trial of a person accused of a crime. Hinton v. State, 280 Ala. 48, 50, 189 So.2d 849
(1966); Brasher v. State, 249 Ala. 96, 98, 30 So.2d 31 (1947). It is equally settled that the rule is subject to a host of exceptions. See generally Brasher v. State, 249 Ala. at 98-102,30 So.2d 31; C. Gamble, McElroy's Alabama Evidence § 69.01 (3rd ed. 1977). Proffered evidence may fall within one of these exceptions, however, only when the evidence is relevant to the crime charged. Mason v. State, 259 Ala. 438, 441, 66 So.2d 557
(1953); Noble v. State, 253 Ala. 519, 523, 45 So.2d 857 (1950).
It was the state's assertion at trial, and now on review, that extrinsic evidence of Killough's involvement with bribery, kickbacks, and bid-rigging is admissible under either the intent, or common plan or scheme exception to the so called "exclusionary" rule. See McElroy's § 69.01 (5) and (6). The State contends the theft of the portable building was one facet of a larger scheme between Killough and Deep to unlawfully enrich themselves during the period when disaster funds were available; hence, the State says the extrinsic acts were admissible to show the larger conspiracy and thereby rebut any claim of theft by inadvertence.
The fatal flaw in this reasoning is that such an extensive conspiracy was neither charged in the indictment, nor is the evidence of such other offenses relevant to this offense for which he was indicted. Evidence offered under the exceptions to the exclusionary rule must be relevant to a crime charged, rather than to an uncharged conspiracy. In other words, evidence of other crimes must be both relevant and material.See 1 J. Wigmore, Wigmore on Evidence, Chap. I § 2 (3rd ed. 1940).
As this court stated in Mason v. State, 259 Ala. at 440,66 So.2d 557:
 "Under our system of law when a defendant is tried in an indictment, he must be tried on that indictment. The purpose of the indictment is to limit and make specific the charges that the defendant will have to face on the trial. It is evident that if upon the trial of a fixed and specific charge, evidence of other and separate and distinct offenses are allowed, the result is that the defendant is actually being tried for a series of crimes. . . ."
The same concern articulated in Mason is present here. There is a very real possibility that the petitioner was convicted of a crime other than the theft of the Morgan portable building. Such a possibility strikes at the core of our legal system and common understanding of justice.
Hence, the sole question to be considered by this court is whether acts of bribery, bid-rigging, and kickbacks are relevant to prove a common scheme or criminal intent to commit the crime specified in the indictment, theft of the Morgan portable building. We hold they are not.
In Mason v. State, 259 Ala. at 438, 66 So.2d 557, this court refused to allow evidence of uncharged robberies allegedly committed by the defendant to be admitted at trial where the robberies were unconnected with the charged crime and failed to reveal a similar modus operandi. More recently, in Mayberry v.State, 419 So.2d 262 (Ala.Crim.App. 1982), the Court of Criminal Appeals rejected the admissibility of "double-dipping" on an expense account where the crime charged was procuring a prostitute.
Similarly, the only connection between the crime of theft and the other uncharged acts in the case at bar is that all the disaster funds had a common source, account 303102. That Killough may have appropriated funds from this account for his *Page 336 
economic enrichment is not probative of a plan or criminal scheme to steal a portable building also purchased with funds from the same account. In fact, James Meredith testified he had neither seen nor had any conversations with Killough regarding the Morgan portable building. We do not consider the extrinsic evidence presented here to be indicative of a criminal intent to steal the portable building. Bid-rigging, bribery, and kickbacks are so unconnected by circumstances with the crime of theft of a portable building that proof of these acts has no bearing on the ultimate issue of guilt and is therefore inadmissible. Hinton v. State, 280 Ala. at 50, 189 So.2d 849. As this court said in Brasher v. State, 249 Ala. at 100,30 So.2d 31, "such testimony in its final analysis shows nothing more than the defendant's character is bad."
Having found, for the foregoing reasons, that this testimony was inadmissible, we also find its admission was so prejudicial to Killough as to require a reversal. The judgment of the Court of Criminal Appeals is due to be and is hereby reversed and this case remanded to that court for action consistent with this opinion. We note, however, that other issues raised are without merit.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.