TAYLOR, Judge.
Appellant Levi Hill was convicted of sexual abuse in the second degree, in violation of § 13A-6-67(a)(2), Code of Alabama 1975, a class A misdemeanor. He was sentenced to serve 12 months in the Talladega County Jail. On appeal he presents two issues. Since one requires reversal and is disposi-tive of the case, we will address only it. We do not intend, however, to say the other issue does not also justify reversal.
This conviction was predicated upon evidence that the appellant, who had come home drunk and combative, physically abused several of his children. His 12-year-old daughter testified that he pinched her on her breasts and in the pubic area. Thereafter, when he began beating an older daughter, the sheriffs department was called.
This incident was the culmination of a pattern of conduct of Hill’s coming home intoxicated and abusing and striking various members of the family. Deputy Sheriff Eddie Wilds testified, in pertinent part, as follows:
“Q: Have you ever had occasion to go down there to his residence?
“A: Yes, sir.
“Q: On how many occasions, in your best judgment have you gone to his residence or near there?
“A: Well, for him and Howard Johnson, probably two or three hundred times.”
[The jury was instructed to disregard this answer.]
Deputy Wilds testified that every time he was called to appellant’s house, appellant was under the influence of alcohol and that several times he was in a state of undress. He testified that the Hill family “were usually the ones that called,” and that “that’s usually what we got called on. He would be whipping his kids and his wife.” But that “usually when we would pull up in the yard, it would quit.”
At trial, appellant’s wife and sons would not testify to the facts alleged in the indictment. The wife testified that she did not see the appellant pinch her daughter. She stated that she did tell some things to the sheriff’s female investigator but testified as follows:
“A: I made it all — most of it up. I really did.
“Q: So you are saying that you did say it?
“A: I was in such a state of mind and we had been arguing and fussing and I *437 wanted to hurt him — (witness crying)”
The older daughter testified to his beating her but testified that she did not see her father do anything to her younger sister.
Because only the 12-year-old girl would give testimony concerning her father having pinched her, the state proceeded to attempt to make out its case by “impeachment” of the other witnesses. The jury was, of course, cautioned to consider these quotes from previous written statements only as impeachment testimony, although it is clear that the state’s evidence forms a pattern of proof of a case made out more by “impeachment testimony” than by direct testimony. The state presented direct affirmative testimony of the pinching by the testimony of the alleged victim, Barbara Hill. The remainder of the state’s case consisted of statements by the older daughter, Donna Hill and the mother, Dorothy Hill, which they said they could not remember; statements by the sons, Bobby Hill and Dewayne Hill, which they said they could not remember; and a straight denial by the father, Levi Hill.
By the device of asking questions for “impeachment,” the state showed that 11-year-old Bobby Hill had given a statement to an investigator. He told the investigator that when he was about 5 or 6 years old, he was in the woods with the appellant and the appellant tried to make him pull off his clothes, and “then he tried to stick his pecker up my tail.” This was vehemently denied at trial by Bobby Hill. •
A sheriff’s investigator, Barbara Dis-pain, testified that appellant Levi Hill made a statement to her in which he said, in part:
“Every two or three months I pick at Bobby. I tell him I will ream him in your butt hole. I touch him on the back, 4th or 5th disc up on the backbone, about three or five inches above the butt. I touch him with by finger. Sometimes I hold him and pull his britches down. The last time I pulled his pants down was three or four months ago. This is Bobby Hill.”
Our Supreme Court has recently provided us with considerable guidance in the area of what prior bad acts may be proved against an accused person in order to prove the charge in the instant case. In Anonymous v. State, 507 So.2d 972 (Ala.1987), at 973-74, the Supreme Court stated:
“The general evidentiary principle, long adhered to in Alabama, which must be applied in this case may be stated as follows: In a prosecution for one offense, evidence of collateral crimes or acts is generally inadmissible to prove the guilt of the accused. See Ex parte Cofer, 440 So.2d 1121 (Ala.1983); Ex parte Killough, 438 So.2d 333 (Ala.1983); Brasher v. State, 249 Ala. 96, 30 So.2d 31 (1947); Haley v. State, 63 Ala. 89 (1879); Ingram v. State, 39 Ala. 247 (1864). In fact, it has been stated that such evidence is prima facie inadmissible. See Cofer, supra; Brasher, supra; Allen v. State, 380 So.2d 313 (Ala.Crim.App.1979), cert. denied, 380 So.2d 341 (Ala.1980).
“As was explained in Cofer:
“ ‘This is a general exclusionary rule which prevents the introduction of [collateral] criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question. This rule is generally applicable whether the other crime was committed before or after the one for which the defendant is presently being tried.
“ ‘ “This exclusionary rule is simply an application of the character rule which forbids the state to prove the accused’s bad character by particular deeds. The basis for the rule lies in the belief that the prejudicial effect of [collateral] crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of [collateral] crimes has almost an irreversible impact upon the minds of the jurors.” ’
“Cofer, 440 So.2d at 1123 (quoting C. Gamble, McElroy’s Alabama Evidence § 69.01(1) (3d ed. 1977) (hereinafter cited as “McElroy’s”).
*438 “The rationale for this general exclusionary rule was well stated by one commentator:
“ ‘This exclusionary rule has long been the law in Alabama and every other American jurisdiction and is “[a] concomitant of the presumption of innocence,” which requires that “a defendant ... be tried for what he did, not for who he is.”
“ ‘Evidence that tends to show guilt of another offense is not excluded because it is irrelevant. Indeed, because “a man of bad character is more likely to commit a crime than one not [of bad character],” evidence of collateral crimes or acts is frequently highly relevant. Nonetheless, such evidence is excluded because of its potentially prejudicial impact. Evidence of collateral crimes or acts may “direct the jury’s attention away from the offenses charged to a crime not charged,” it may be so heinous in nature as to “incite the jury to irrational decision by its force on human emotion,” or it may lead the jury to conclude that because the defendant “ ‘committed some other similar crime, he must also have committed the crime for which he is on trial.’ ” ’
“(Footnotes omitted.) Schroeder, Evidentiary Use in Criminal Cases of Collateral Crimes and Acts: A Comparison of the Federal Rules and Alabama Law, 35 Ala.L.Rev. 241 (1984).
“This rationale notwithstanding, there exist certain exceptions to this general exclusionary rule. Although evidence of collateral crimes and acts may not be admitted to prove the accused’s bad character, it has been held admissible to prove such things as the accused’s criminal intent, his motive, or his identity, or to prove that the now charged crime and another crime were committed pursuant to a single plan, design, scheme, or system. See generally, McElroy’s § 69.01, and those cases cited therein. Of course, the evidence offered must be relevant to some issue that is material to the case. See Cofer, supra (evidence offered was inadmissible because it was offered to prove intent and there existed ‘no real and open issue’ concerning the accused’s intent); Killough, supra (evidence offered under the exceptions to this general exclusionary rule must be both relevant and material).
“Application of this rule and its exceptions to the facts of the present case makes it clear that the Court of Criminal Appeals correctly determined that the evidence of the prosecutrix’s pregnancy and her abortions and the sister’s pregnancy and resulting child was inadmissible. There is simply no imaginable reason for the admission of this testimony other than to prove the defendant’s bad character. This is, of course, not an acceptable purpose. See Bracher v. State, 249 Ala. 96, 30 So.2d 31 (1947).”
Evidence of homosexual tendencies of appellant five or six years before the incident of pinching his daughter is not evidence of a plan, scheme, intent, or design to commit sexual abuse in the second degree upon the daughter. Section 13A-6-67 reads as follows:
“(a) A person commits the crime of sexual abuse in the second degree if:
[[Image here]]
“(2) He, being 19 years old or older, subjects another person to sexual contact who is less than 16 years old, but more than 12 years old.”
The above quoted statement from the appellant is unclear. It is not clear whether he was threatening future homosexual abuse, or whether he was generally threatening violence intended to curb misconduct. In either event, it seems to have been offered and received into evidence over objection to bolster the “impeachment” of Bobby Hill. The connection between this alleged act and the pinching of the 12-year-old daughter is extremely tenuous. The prejudicial effect of such evidence vastly outweighed its probative value. It amounts to an attempt to prove guilt on the basis of a prior bad act. Hill’s statement about threatening his son has little relevance to the question of his intent when he pinched his daughter. It was evidence of a prior bad act used to prove guilt. As *439 such, it is condemned by the authorities hereinabove stated. We conclude that the appellant did not receive a fair trial. This cause is reversed and remanded to the circuit court for a new trial or other proceedings not inconsistent with this opinion.
“The worst wretch that walks the earth is entitled to a fair trial, for the law is superior to all persons. As much as we may regret some results of the law, the law must be preserved if this constitutional democracy is to survive.”
Watts v. State, 282 Ala. 245, 248, 210 So.2d 805 (1968).
REVERSED AND REMANDED.
All the Judges concur.