REL:09/26/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

_____

### 1120563

_____

**Ex parte Christie Michelle Scott**

**PETITION FOR WRIT OF CERTIORARI
TO THE COURT OF CRIMINAL APPEALS**

**(In re:  Christie Michelle Scott**

**v.**

**State of Alabama)**

**(Franklin Circuit Court, CC-08-344;
Court of Criminal Appeals, CR-08-1747)**

SHAW, Justice.

WRIT DENIED. NO OPINION.

Stuart, Bolin, Parker, Murdock, and Bryan, JJ., concur.

Moore, C.J., concurs in part and dissents in part.

Wise, J., recuses herself.*


*Justice Wise was a member of the Court of Criminal Appeals when that court considered this case.

1120563

MOORE, Chief Justice (concurring in part and dissenting in part).

Christie Michelle Scott petitions this Court for a writ of certiorari to review the judgment of the Court of Criminal Appeals affirming her capital-murder convictions and sentence of death. Scott v. State, [Ms. CR-08-1747, Oct. 5, 2012] ___ So. 3d ___ (Ala. Crim. App. 2012). In her petition, Scott raises 22 issues for review. I concur in denying Scott's petition on all issues except her claim under Rule 404(b), Ala. R. Evid. Therefore, as to that issue I dissent from the denial of Scott's petition.

## I. Facts and Procedural History

In the early morning hours of August 16, 2008, a fire broke out in the children's bedroom in the home of Christie and Jeremy Scott in Franklin County. Jeremy was away on a business trip. Four-year-old Noah was sleeping with his mother in her bedroom; six-year-old Mason was asleep in his room. As the fire burned, the mother escaped out of her bedroom window with her son Noah and knocked on a neighbor's door to call for help. The neighbor dialed emergency 9-1-1. The fire department put out the fire, but the blaze was too intense for the

2

1120563

firefighters to rescue Mason, who died from burns and smoke inhalation.

The State charged Scott with three counts of capital murder: murder committed for pecuniary gain, murder by arson, and murder of a child under the age of 14. See §§ 13A-5-40(a)(7), -40(a)(9), and -40(a)(15), Ala. Code 1975. After a one-month trial, the jury convicted Scott on all three counts and, in the penalty phase, by a 7-5 vote, recommended a sentence of life imprisonment without the possibility of parole. The trial court, finding as an aggravating circumstance that a mother's murder of her child by means of arson is particularly heinous, atrocious, or cruel when compared to other capital offenses, imposed the death penalty.

Scott appealed; the Court of Criminal Appeals affirmed her convictions and her sentence of death.

## II. Discussion

Ordinarily evidence at trial is limited to proof of the crimes charged or the circumstances leading up to them.[1]

---

[1]The larger context of a criminal act is known as the res gestae, namely, "things done" that are inseparably connected to the act charged and that are necessary to understand it. See I Charles W. Gamble, McElroy's Alabama Evidence § 70.01(12)(b) (6th ed. 2009) (noting that evidence of acts that are part of the same transaction as the crime charged is admissible).

Evidence of independent collateral bad acts, however, is presumptively inadmissible to suggest that the defendant is guilty of the crime charged. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b), Ala. R. Evid.[2] "Evidence of prior bad acts of a criminal defendant is presumptively prejudicial to the defendant. It interjects a collateral issue into the case which may divert the minds of the jury from the main issue." Ex parte Cofer, 440 So. 2d 1121, 1124 (Ala. 1983).

In this case the trial court admitted, over Scott's objection, evidence of two earlier fires in January 2006 that had occurred at the house the Scott family was then occupying. The first, a minor event, was deemed accidental. The second, which demolished the house, was listed by the insurance examiner as arson. However, no criminal charges were filed, and the insurance company paid the claim. The State argued that evidence of the earlier fires was admissible in the

---

[2]One scholar paraphrased the rule: "That is, evidence that a defendant has done something like this before is not admissible solely to show his propensity to do things like this as the basis for inferring that he did it this time." Jerome A. Hoffman, The Alabama Rules of Evidence: Their First Half-Dozen Years, 54 Ala. L. Rev. 241, 269 (2002).

capital-murder trial to identify Scott as the perpetrator of the fire that resulted in the death of her son. Admittedly, such evidence is relevant to proving the charge. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Ala. R. Evid. But the reason such evidence is generally excluded is that it is too likely to sway the jury to convict upon facts other than those charged in the indictment. The presumption of innocence, a bedrock principle of criminal law, requires that "'a defendant ... be tried for what he did, not for who he is.'" Allen v. State, 478 So. 2d 326, 331 (Ala. Crim. App. 1985) (quoting United States v. Myers, 550 F.2d 1036, 1044 (5th Cir. 1977)).

Rule 404(b) lists a number of exceptions to the general rule against admissibility of prior bad acts, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In granting the State's motion to admit evidence of the 2006 fires, the trial court found "that these fires can be used in regard to show plan, motive, and identity." The common-plan exception "is

5

1120563

essentially coextensive with the identity exception." Ex parte Darby, 516 So. 2d 786, 789 (Ala. 1987). The identity exception is quite narrow and is applicable only when "the identity of the person who committed the charged offense is in issue and the charged offense is committed in a novel or peculiar manner." Ex parte Baker, 780 So. 2d 677, 679 (Ala. 2000).

Because Scott denied that she had set the fire that resulted in her son's death but did not contend that someone else did so, the identity of the person who committed the alleged crime was not at issue. Instead, the issue was whether a crime had occurred, not who had committed it.

> "The identity of the person who actually committed the acts with which the defendant was charged was not at issue. The defendant did not argue that 'someone else committed the acts with which he was charged'; instead, he merely denied that the acts ever occurred. Therefore, because there was no 'real and open' issue concerning identity, the collateral acts could not be admissible as going toward such an issue."

Anonymous v. State, 507 So. 2d 972, 975 (Ala. 1987). See also Windsor v. State, 110 So. 3d 876, 882 (Ala. Crim. App. 2012) (admitting evidence of a prior act "with a very high degree of similarity" to the crime charged when the defendant's testimony that he was not the one who had robbed a CVS store "placed at issue his identity as the perpetrator of the

6

crime"); <u>Mothershed v. State</u>, 596 So. 2d 47, 48 (Ala. Crim. App. 1991) (reversing a judgment of conviction where the evidence of collateral acts was admitted to prove "identity or common plan, scheme, or design," but "[t]he appellant never alleged that someone else was the perpetrator of the crimes," only that the acts never occurred).

Likewise the prior fires and the fire that resulted in the death of Scott's son were not so "novel and peculiar" as to mark them as Scott's "'signature crimes' having the accused's mark and the peculiarly distinctive modus operandi so that they may be said to be the work of the same person." <u>Bighames v. State</u>, 440 So. 2d 1231, 1233 (Ala. Crim. App. 1983). See also <u>Hurley v. State</u>, 971 So. 2d 78, 83 (Ala. Crim. App. 2006) ("'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.'" (quoting 1 <u>McCormick on Evidence</u> § 190 at 803 (4th ed. 1992) (footnotes omitted))). A federal district judge offered this vivid and insightful description of the identity exception:

> "'[B]ut sometimes in criminal offenses, one's method of doing things, of painting a portrait or of laying fancy brickwork or of committing a crime, the methods and artistry involved are so similar that you can almost say from looking at two of them that

the same hand did both of them. In other words, similarity of method, similarity of mode of operation is sometimes almost like a trademark of its author.'"

United States v. Jackson, 451 F.2d 259, 263 n.6 (5th Cir. 1971) (quoting the trial court's instructions and charge to the jury regarding identity evidence).

Arson is a property crime that requires that the defendant possess the intent to damage or recklessly damage a **building**. See §§ 13A-7-41 through -43, Ala. Code 1975. One of the capital offenses charged in this case is "[m]urder by the defendant during arson in the first or second degree committed by the defendant." § 13A-5-40(a)(9), Ala. Code 1975. As applicable to this case, "murder by the defendant" means that, "[w]ith intent to cause the death of another person, he or she causes the death of that person or another person." § 13A-6-2(a)(1), Ala. Code 1975. See § 13A-5-40(b), Ala. Code 1975.

The State's burden in this case was not merely to prove that Scott committed arson but that she did so "with intent to cause the death" of her son. The State does not allege that evidence of the 2006 fires is probative of Scott's intent to murder her son; it alleges only that that evidence shows a common scheme or plan to collect insurance proceeds. If Scott

8

were charged in this case with arson rather than with capital murder, the State's argument might have some plausibility. Even then the probative value of the separate acts would be questionable. See Brasher v. State, 249 Ala. 96, 98, 30 So. 2d 31, 33 (1947) (noting that "proof of another and distinct offense has ordinarily no tendency to establish the offense charged"). In this case, however, a supposed "signature crime" of arson is proposed to identify Scott as the author of a subsequent murder "committed by some novel or extraordinary means or in a peculiar or unusual manner," Wilder v. State, 30 Ala. App. 107, 109, 1 So. 2d 317, 319 (1941), as to "exhibit such a great degree of similarity that anyone viewing the two offenses would naturally assume them to have been committed by the same person." Brewer v. State, 440 So. 2d 1155, 1161 (Ala. Crim. App. 1983).

But obviously the dissimilarity between the 2006 and the 2008 events, especially as it relates to the crimes charged -- capital murder in 2008 and no charge at all in 2006 -- makes the claim that evidence of the 2006 events was offered to prove a "signature crime" less than convincing.[3] Under the

---

[3]For the same reason, the motive exception is not applicable. As Scott argues, "a motive to collect a homeowner's insurance claim from a house fire is not the same

9

guise of proving identity, namely, a novel or peculiar methodology unique to Scott, the State succeeded in presenting to the jury mere propensity evidence. "'But evidence of accused's commission of other offenses which does nothing more than indicate the accused's inclination or propensity to commit the type of crime charged is not admissible as tending to show identity.'" Mason v. State, 259 Ala. 438, 442, 66 So. 2d 557, 560 (1953) (quoting Judge McElroy, The Law of Evidence in Alabama).

Scott was in effect tried not only for the 2008 fire, but also for the uncharged 2006 fires, thus inducing the jury to convict her based on all those events, even though the former acts were not mentioned in the indictment. See Brewer v. State, 440 So. 2d 1155, 1164 (Ala. Crim. App. 1983) (holding that an improperly admitted prior conviction "had no probative value in relation to its inflammatory effect on the factfinders"). "The District Attorney explained to the jury in his opening statement that 'we're going to try to prove [the 2006] fires just as much as we prove [the 2008] fire.'" Scott's brief, at 93. The tendency of this tactic is to convict the defendant, not upon proof of guilt of the crime

as a motive to kill one's son." Scott's petition, at 91.

charged, but for a general criminal propensity -- exactly what Rule 404(b) prohibits.

The introduction of such evidence is peculiarly tempting when the prosecution's case is far from airtight and the State needs to nudge the jury to find guilt beyond a reasonable doubt.[4] That is exactly what occurred in this case. As the Court of Criminal Appeals stated: "Here, Scott denied setting the fire, and the evidence against Scott was circumstantial. Evidence of the 2006 fires at Scott's house was <u>crucial</u> to the State's case to prove the identity of the perpetrator of the 2008 fire and the motive behind the 2008 fire." <u>Scott</u>, ___ So. 3d at ___ (emphasis added). Thus, the State's other evidence was not so overwhelming as to render the improper admission of the prior-fires evidence harmless beyond a reasonable doubt. See Rule 45, Ala. R. App. P. (harmless-error rule); <u>Moore v. State</u>, 49 So. 3d 228, 234-35 (Ala. Crim. App. 2009).

The issue in the case was whether arson occurred at all, not who set fire to the house, be it Scott or someone else. Likewise, a comparison of the 2006 fires and the 2008 fire did

---

[4]"[I]n many criminal cases evidence of an accused's extrinsic acts is viewed as an important asset in the prosecution's case against an accused." Advisory Committee Notes on 1991 Amendment to Rule 404, Fed. R. Evid.

1120563

not show "'such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.'" <u>Mayberry v. State</u>, 419 So. 2d 262, 268 (Ala. Crim. App. 1982) (quoting <u>Wigmore on Evidence</u> § 304 (3d ed. 1972)). Using a person's prior bad acts to sway the jury to convict in a close case is generally impermissible for reasons already discussed.

> "'In a large degree the effect of such a proceeding is to "shut the gates of mercy on mankind," so that if but once an individual suffers a lapse of virtue, thenceforward the law will pursue him with the vindictive zeal of a Javert, using a single accusation to wreak upon him the cumulative vengeance of a general inquisition.'"

<u>Brasher</u>, 249 Ala. at 100, 30 So. 2d at 35 (quoting <u>State v. Start</u>, 65 Or. 178, 192, 132 P. 512, 517 (1913)). This principle is even more applicable when the prior acts posited as precursors and exemplars of the charged offense possess no "novel and peculiar" characteristics of themselves and offer no hint or foreshadowing of looming infanticide.

"The defendant was entitled to be tried for the crime with which he was charged and no other." <u>Allen v. State</u>, 478 So. 2d 326, 331 (Ala. Crim. App. 1985). "The worst wretch that walks the earth is entitled to a fair trial, for the law is

12

1120563

superior to all persons. As much as we may regret some results of the law, the law must be preserved if this constitutional democracy is to survive." Watts v. State, 282 Ala. 245, 248, 210 So. 2d 805, 808 (1968).

For the foregoing reasons, I respectfully dissent from the denial of Scott's petition for a writ of certiorari on the issue of admission of the prior-fires evidence. In all other respects, I concur in denying the petition.