The appellant, Maxwell Rodney Reeves, was indicted for the offense of murder and, following a jury trial, was convicted of manslaughter. He was sentenced to a term of 10 years' imprisonment, the first two years to be served and the remainder to be on probation, with a period of probation to be set for three years.
Shirley Orr of the Morgan County Sheriff's Department testified that he received a call that a shot had been fired and that he proceeded to the scene of the shooting. He testified that he entered the residence and observed a man lying on the kitchen floor. He examined the man for any signs of life and determined that he was dead. Orr further testified that there were three or four persons present and that, when he asked if they knew who was responsible for shooting the man, the appellant indicated that he had shot the man. Orr then asked the appellant, "What did you shoot him with?" and the appellant pointed to a gun lying on a dresser. Thereafter, Lieutenant Johnson arrived at the scene and took charge of the investigation.
James Waldrop testified that on the night in question he was visiting the appellant, who was living with Waldrop's half sister. He testified that he did not know the deceased, Richard Parker, before that night. Waldrop stated that he arrived at *Page 170 
the scene between 10:45 and 11:00 p.m. He walked up to the porch and observed a man standing there and talking to the appellant at the screen door. The appellant unlocked the screen door and allowed Waldrop to enter. Waldrop asked his half sister who the man was and she informed him that it was Rick Parker. Parker entered the house shortly after Waldrop and entered the kitchen, where Waldrop and his half sister were talking. Parker asked to play Waldrop's guitar; Waldrop refused and left the room. Approximately five minutes later, Waldrop's half sister left the kitchen crying; and Waldrop testified that he then heard the appellant state, "No, Rick. I told you you had had enough to drink. Don't drink any more." Waldrop further testified that he then heard the cap being taken off a whiskey bottle and Parker made the statement, "You're going to have to shoot me, Max." Waldrop testified that he heard the gunshot. Waldrop was not in the kitchen during the conversation, but he overheard the conversation. He never saw Parker with any sort of weapon or heard him make any threats. Waldrop further testified that, after he had left the kitchen, he began speaking to his half-brother, Don Martin, who informed Waldrop that the appellant had been attempting to get Parker to leave all evening. Waldrop also testified that Martin told him that the appellant had taken Parker somewhere earlier but that Parker would not get out of the car so the appellant brought him back.
The autopsy on Parker revealed that he died as the result of a gunshot wound to the left chest. Further, Parker's blood contained 0.28 percent alcohol.
The appellant took the stand and testified that when he first saw Parker on the night in question, he was walking down the hallway into the kitchen. The appellant testified that Parker had not been invited and had just walked in his house. The appellant told Parker to get out of his house, whereupon Parker began to verbally harass him. Apparently, Parker was having problems with a woman who lived with him. The woman had left him and was staying at the appellant's house. Parker threatened to kill anyone who got in his way. Parker stated that he would not leave and the appellant testified that he appeared to be drunk. He had a half gallon bottle of whiskey with him which was half empty. Parker continued drinking while he was talking to the appellant. Waldrop's sister picked up the half gallon bottle and poured the rest of it down the sink. Thereafter, Parker threatened to kill her. Parker informed appellant he wanted to go over to some friends' house and the appellant drove him to the vicinity of the house in order to get him out of his home. Parker then stated he would not get out of the car unless the appellant took him to Decatur or Hartselle. The appellant drove back to his house and still Parker would not leave. Before the appellant had left with Parker in the car, Waldrop's half sister had slipped the appellant a gun and when Parker refused to leave upon their return to the appellant's house, the appellant fired a warning shot into the ground. Parker jumped out of the car and attempted to grab appellant, who backed away and warned him, "Don't do it." Parker pretended to leave and the appellant went into his house and locked the door. Approximately three or four minutes later Waldrop arrived and when Waldrop walked up to the front porch, Parker came with him. When the appellant opened the screen door to allow Waldrop to walk in, Parker pushed his way in behind Waldrop. Parker went into the kitchen and thereafter grabbed a bottle of liquor out of the refrigerator. Waldrop's half sister attempted to take the bottle away from him. Parker pushed her into the kitchen table and told her to get out of the kitchen or he would kill her. The appellant quickly entered the kitchen, whereupon Parker walked toward the appellant, threatening to kill him and everyone in the house. Parker had the bottle in his hand and pulled it back as if he intended to strike the appellant with it. The appellant ducked, pulled his pistol out of his pocket, and shot Parker.
 I
The appellant contends that the trial court erred in allowing the jury to be unsequestered. *Page 171 
According to § 12-16-9(d), Code of Alabama (1975), during the prosecution of a non-capital felony, the trial court has discretion over the decision of whether to allow the jury to separate during pendency of the trial, "provided that the court may at any time on its own initiative or on motion of any party, require that the jury be sequestered under the charge of a proper officer whenever they leave the jury box or the court may allow them to separate." Furthermore, according to §12-16-9(a), where the trial court permits the jury to separate, a presumption of prejudice to the accused is not created, "but on the contrary it shall be prima facie presumed that the accused was not prejudiced by reason of the separation of the jury." The record indicates that the trial judge cautioned the jury not to discuss the case with anyone. See Reeves v. State,432 So.2d 543 (Ala.Cr.App. 1983).
Furthermore, the appellant has failed to demonstrate that he was prejudiced by the trial court's failure to require sequestration of the jury. Willis v. State, 441 So.2d 1030
(Ala.Cr.App. 1983). "There is no contention or showing nor was there any effort made during the trial to demonstrate that anyone contacted any of the jurors or that they were, in fact, influenced by anything written or spoken through any media."Trahan v. State, 450 So.2d 1102, 1106 (Ala.Cr.App. 1984).
 " 'The trial judge believed there was no reason to sequester the jury during the trial and the appellant has not shown that he was prejudiced in any way by any such separation.
 " 'Therefore, we find no abuse of discretion in the trial judge's decision to allow the jury to separate during this appellant's trial. No injury has been shown.' "
Murray v. State, 494 So.2d 891 (Ala.Cr.App. 1986), quoting Fikev. State, 447 So.2d 850, 859 (Ala.Cr.App. 1983).
 II
The appellant argues that the trial court erred in denying his motion to record the opening and closing statements. Section 12-17-275, Code of Alabama (1975), provides:
 "The official court reporter shall attend in person, except as otherwise herein provided, the sessions of court held in the circuit for which he is appointed, and in every case, where directed by the judge or requested by a party thereto, he shall take full stenographic notes of the oral testimony and proceedings, except argument of counsel, and note the order in which all documentary evidence is introduced, all objections of counsel, the rulings of the court thereon and exceptions taken or reserved thereto." (In pertinent part; emphasis added.)
"The official court reporter is not required to transcribe the argument of counsel except where objection is made.McClary v. State, 291 Ala. 481, 282 So.2d 384 (1973); Langfordv. State, 354 So.2d 297 (Ala.Cr.App. 1977), rev'd on other grounds, 354 So.2d 313 (Ala. 1977); Ala. Code § 12-17-275
(1975)." Ervin v. State, 399 So.2d 894, 898 (Ala.Cr.App. 1981), cert. denied, 399 So.2d 899 (Ala. 1981). Any remarks made by the prosecutor which the appellant considers objectionable should be fully quoted, or substantially so, by objection. Id.
 "It is incumbent upon counsel, where he makes objection to the closing argument, to specifically state and present to the attention of the trial court by proper objection such argument and the court's ruling thereon in order that the court reporter be able to transcribe same and include this in the record on appeal. . . . Moreover, where, as here, the appellant is not an indigent, it is incumbent upon counsel, if he desires the complete closing argument transcribed, to bring in a court reporter and have same done, or to pay the reporter for transcribing the complete closing argument."
Briggs v. State, 375 So.2d 530, 535 (Ala.Cr.App. 1979).
The appellant has made no allegations concerning specific arguments made by the prosecutor in his closing or his opening statement which the appellant deemed objectionable. Moreover, Alabama law does *Page 172 
not require the court reporter to take down the complete argument of counsel.
 III
The appellant contends that the trial court erred in dismissing his motion for new trial. However, in the trial court's order dismissing the appellant's motion for new trial, it is apparent that this motion was set for a hearing and that on the date set for the hearing the appellant's attorney did not appear. Thereafter, the same attorney was inquired of by mail as to whether his failure to appear was due to weather conditions or whether he intentionally waived the motion. That inquiry was made on December 26, 1985, and on January 10, 1986, when no response had yet been received, the trial court dismissed the motion. On February 10, 1986, the appellant's counsel made a motion to resubmit his motion for new trial on affidavits and without oral argument. That motion was stamped "Moot."
In his brief on appeal, the appellant's counsel argues as follows: "The defendant's motion for a new trial was well taken and the trial court erred in dismissing this motion. It should have been granted."
 "According to A.R.A.P. 45B, this court is not obligated to consider questions or issues not presented in briefs on appeal. The appellant's brief, according to A.R.A.P. 28(a)(3), shall contain a statement of issues presented for review with principal authorities of law supporting each issue presented. Furthermore, A.R.A.P. 28(a)(5) requires that the argument presented in a brief shall contain contentions of appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied upon."
Vinzant v. State, 462 So.2d 1037, 1039 (Ala.Cr.App. 1984).
"Arguments not based on any legal authority have the same effect as if no argument had been made, and the argument will be deemed waived. Jones v. City of Decatur, 53 Ala. App. 470,301 So.2d 235 (Ala.Cr.App. 1974); Terry v. City of Decatur,49 Ala. App. 652, 275 So.2d 167 (Ala.Cr.App. 1973); Adams v. State,291 Ala. 224, 279 So.2d 488 (1973)." Id.
 IV
The appellant argues that his trial was unfair because the deceased's family and friends made repeated threats and threatening gestures during the trial. Specifically, the appellant argues that during recesses, the unsequestered jury was allowed to roam through the courthouse while the deceased's family made "loud and violent threats, that could be clearly heard, against defendant, his witnesses, and his attorneys." In the appellant's motion for new trial, he attached three affidavits from parties present during the trial who stated that they were harassed by the victim's family members or friends. None of the three were members of the jury; rather they were the woman with whom the victim had been living; Waldrop's half sister; and Tunis C. Reeves, presumably a relative of the appellant.
The decision of whether or not to grant a motion for new trial is a matter within the discretion of the trial court.Hollins v. State, 415 So.2d 1249 (Ala.Cr.App. 1982); Watson v.State, 389 So.2d 961 (Ala.Cr.App. 1980).
 " 'The prejudicial effect of communications between jurors and others, especially in a criminal case, determines the reversible character of the error. Whether there has been a communication with the juror, and whether it has caused prejudice are fact questions to be determined by the Court in the exercise of sound discretion. . . . His ruling and determination will not be disturbed in the absence of a showing of abuse of discretion.' "
Davis v. State, 457 So.2d 992, 995 (Ala.Cr.App. 1984), quotingGaffney v. State, 342 So.2d 403 (Ala.Cr.App. 1976), cert.denied, 342 So.2d 404 (Ala. 1977).
 "While the defendant is entitled to a trial free of any extraneous influence that might be to his prejudice, Hammond v. State, 26 Ala. App. 391, 160 So. 900 (1935), a criminal trial should be public. Jackson v. Mobley, 157 Ala. 408, *Page 173 47 So. 590 (1908). If the conduct of a spectator interferes with the administration of justice, he may be removed. Williams v. State, 57 Ala. App. 158, 326 So.2d 686, cert. denied, 295 Ala. 428, 326 So.2d 692 (1975). Much is left to the discretion of the trial judge in this regard. McGuire v. State, 239 Ala. 315, 318, 194 So. 815 (1940). Although McGuire was a prosecution for the murder of a street car conductor, the trial court refused to exclude from the courtroom some conductors or motormen who entered during the trial and who were in uniform. The appellate court upheld the judge's action:
 " 'During the entire trial the record gives no indication of any feeling or prejudice or the slightest disorder; and the mere fact that it was a conductor who was killed gave no just reason to exclude these men from the courtroom. This too was largely a matter of discretion, with no abuse thereof shown.' 239 Ala. at 318, 194 So. at 816.
 "As McGuire indicates, even persons related to the victim have been properly allowed to remain in the courtroom absent prejudicial conduct on their part."
Hall v. State, 377 So.2d 1123, 1124 (Ala.Cr.App. 1979), cert. denied, 377 So.2d 1128 (Ala. 1979), cert. denied, Hall v.Alabama, 446 U.S. 983, 100 S.Ct. 2964, 64 L.Ed.2d 839 (1980).
 "It is not generally held to be an abuse of the trial judge's discretion to deny a new trial when the victim's immediate family have sat within the bar of the court, within view of the jury, and when they wept, sobbed aloud, or even fainted. Howard v. State, 273 Ala. 544, 142 So.2d 685
(1961). Certainly persons so related, just as other spectators at a public trial, may remain as long as they display no prejudicial conduct or behavior. [Citations omitted.] . . . The statements in this matter following Pollard [v. State, 12 Ala. App. 82, 68 So. 494, reversed on other grounds, 193 Ala. 32, 69 So. 425 (1915)], reflect our thoughts and decision on this issue:
 " 'The court is charged with a high and important duty not without its difficulties in taking proper care to effect the object of according to the accused, a fair and impartial trial while having due regard to interests of the state. No legal reason except that addressed to the court's discretion was assigned why the widow and children should have been excluded or removed to a different part of the courtroom, and we know of no rule of law that would authorize a court to exclude spectators or other persons from the courtroom, or remove them from the view of the jury, during the progress of a public trial of this nature, except for misconduct or some cause that appealed to the sound discretion of the court in administering substantial justice; and it is only abuse of that discretion that this court can review. The record does not, to our mind, present such an abuse of discretion as would justify a court of review in reversing the judgment on account of the court's refusal to grant the defendant's request in this case.' 12 Ala. App. at 90, 68 So. at 497."
Lehr v. State, 398 So.2d 791, 801 (Ala.Cr.App. 1981).
Much of the alleged misconduct by the victim's family and friends supposedly occurred in the hallway or in the cafeteria. These are public areas and any actions occurring therein were outside of the observation of the trial court. Further, from the record, we can find no instance or indication of any misconduct so as to substantiate a claim of abuse of the trial court's discretion. Moreover, as indicated previously, we do not find that the jury was improperly unsequestered.
 V
The appellant argues that the trial court erred in sentencing him to a specific term with no "good time." The appellant alleges that sentencing him to no good time "exceeded the Court's authority to sentence the defendant." The appellant cites no authority for this contention and thus *Page 174 
has waived this argument on appeal. See Vinzant v. State,462 So.2d 1037 (Ala.Cr.App. 1984).
AFFIRMED.
All the Judges concur.