WELCH, Judge,
dissenting.
The majority holds in Part I that the circuit court committed no error when it allowed five law-enforcement officers to testify that Jonathan Elliff had made five calls reporting domestic violence in the year before his - death. I disagree with that holding and the analysis underlying it. I would reverse the conviction and hold that the circuit court erred when it admitted the evidence because the evidence vio *338 lated Rule 404(b) and Rule 403, Ala. R. Evid., and the error was not harmless.
Karla Gaye Chapman admitted that she stabbed her husband, Jonathan Elliff but claimed that she did so in self-defense. The State provided notice of its intent to introduce evidence pursuant to Rule 404(b), Ala. R. Evid., including five domestic-violence calls placed by Elliff in the year preceding his death. The State alleged in its notice that the evidence was going to be offered to prove identity, motive, intent, knowledge, plan, or scheme. Chapman objected to the evidence at a pretrial hearing and again before the testimony was presented at trial. At trial she summarized her objections:
“But at this time I’ll just renew my objection that I made before we started this discussion. Not relevant. Prejudicial. The effect greatly outweighs the probative value, and — I don’t know whether.it does or not — but it may-contain hearsay. [A]nd it’s not also within any permissible purpose under 404(b).”
(R. 255.) The State argued that the evidence was relevant to prove motive and that Chapman was the initial aggressor, and the trial court stated that the evidence would also be relevant to prove intent. The court overruled Chapman’s objection, and gave the jurors a limiting instruction informing them that the testimony could be considered only for the purpose of determining Chapman’s motive and/or intent. The five deputies then testified about responding to the calls.
Certainly, collateral-act evidence may be admitted pursuant to Rule 404(b), Ala. R. Evid., but the general rule is one of exclusion.
“The Alabama Supreme Court has ‘held that the exclusionary rule prevents the State from using evidence of a defendant’s prior bad acts to prove the defendant’s bad character and, thereby, protects the defendant’s right to a fair trial.’ Ex parte Drinkard, 777 So.2d 295, 302 (Ala.2000) (citing Ex parte Cofer, 440 So.2d 1121, 1123 (Ala.1983)). This court has explained that ‘[o]n the trial for the alleged commission of a particular crime, evidence of the accused’s having committed another act or crime is not admissible if the only probative function of such evidence is to prove bad character and the accused’s conformity therewith.’ Lewis v. State, 889 So.2d 623, 661 (Ala.Crim.App.2003) (quoting C. Gamble, McElroy’s Alabama Evidence § 69.01(1) (5th ed.1996)).”
Moore v. State, 49 So.3d 228, 232 (Ala.Crim.App.2009). See also Scott v. State, 163 So.3d 471 (Ala.2014).
For the reasons that follow, analysis of the issue in light of the foregoing principles leads me to conclude that the trial court exceeded its discretion and committed reversible error when it permitted the State to present the deputies’ testimony.
A.
The majority states:
“The State had to prove that Chapman intended to cause Elliff s death as part of its burden in proving murder. .... By presenting evidence indicating that Chapman had been involved in previous domestic altercations with Elliff, the State demonstrated Chapman’s intent to kill Elliff on the night in question. Because Chapman was being prosecuted for the murder of Elliff, her former acts of hostility towards Elliff were admissible to show her motive to commit murder.”
196 So.3d at 331. (Emphasis added.)
The majority overstates the substance of the testimony. No deputy testified that a domestic altercation or an act of hostility had occurred before Elliff placed the calls, *339 and no such inference could reasonably have been made by the jury as a result of. the testimony. Each deputy testified that he or she responded to a domestic-violence call placed by Elliff, and each testified as to the demeanor exhibited by Elliff and Chapman when the deputy was at their residence. First, a former deputy testified that she responded to the call and that Chapman was angry and yelling when the deputy arrived. The officer . arrested Chapman for domestic violence/harassment. Section 13A-6-132(a), Ala.Code 1975, provides that a person commits domestic violence in the third degree if that person “commits the crime of harassment pursuant to subsection (a) of Section 13A-11-8” and the victim is “a current or former spouse.” Section 13A-11-8(a)(1), Ala. Code 1975, provides:
“A person commits the crime of harassment if, with intent to harass, annoy, or alarm another person, he or she either:
“a. Strikes, shoves, kicks, or otherwise touches a person or subjects him or her to physical contact.
“b. Directs abusive or obscene language or makes an obscene gesture towards another person.”
Thus a charge of domestic violence/harassment — the only charge for which Chapman was arrested during any of the five calls — could have been based simply on Chapman’s directing obscene or abusive language at Elliff or making an obscene gesture to him. Testimony about the arrest did not establish Or even imply that Chapman had committed an act of violence against Elliff.
Furthermore, Chapman was not arrested during any of the other domestic-violence calls. The four deputies who responded to those calls testified about their observations as follows: (1) Chapman and Elliff were calm; (2) Chapman was angry because Elliff had been out all night; (3) Elliff and Chapman' were both agitated, and .Chapman was also intoxicated; and (4) the final witness could- not recall.Chapman’s demeanor. This, evidence also did not establish that Chapman had committed an act of hostility or that a domestic altercation had occurred. The State acknowledged this fact in its brief on appeal when it stated that “the State presented no, evidence of any real acts of violence Chápman may' have committed against Jonathan....” (State’s brief, at p. 36.)
Thus, that evidence was purely character evidence that had the effect of suggesting that Chapman’s character was bad and that she acted in conformity with that bad character.' “[Evidence that a’ defendant has done something like this before is not admissible solely to show his propensity to do things like this as the basis for inferring that he did it this time.” Jerome A. Hoffman, The Alabama Rules of Evidence: Their First Half-Dozen Years, 54 Ala. L.Rev. 241, 269 (2002). The State essentially used the domestic-violence calls as character evidence indicating that Chapman was an angry and repetitively abusive spouse and then improperly used that evidence to prove that Chapman had acted in conformity with her bad character when she killed Elliff." The State explained as much to the jury in its closing argument:
“We presented to you five different times that the police were called. Every single time the police were called out to that house ..., every single time, Jonathan Elliff was the one who was calling because he needed some help. He couldn’t calm her down, he couldn’t control her, she just wanted to fight. He was the one that always called,”
(R. 391.)(Emphasis added.)
The only part of the foregoing argument that was supported by the evidence was that Elliff was the person who made the calls. The remainder of that portion of the *340 State’s argument indicated that it had. offered the evidence to- convince the jury that on five occasions before the murder Chapman had been so agitated and angry and combative that Elliff was forced to call for help, because he had -been .unable to control her.. Continuing .with its argument that the five police calls indicated that Chapman had repeatedly been out of control, the State concluded its closing argument by summing up its theory of the case: “She was mad, and she lost control, and she shouldn’t have lost control, but she murdered her husband, Jonathan Elliff.” (R. 393,)' The State intended to , secure a conviction, not based on proof of guilt of the crime charged, but on Chapman’s history of alleged domestic violence against Elliff, and that is exactly what Rule 404(b) prohibits.
Not only did the jury hear inadmissible bad-act testimony, it heard the testimony repeatedly and from five law-enforcement officers. “Without question, the admission of this testimony was prejudicial, adding increments of unrelated guilt to the weighing pans of the scales of justice.” Stephens v. State, 53 Ala.App. 371, 300 So.2d 414, 415 (Ala.Crim.App.1974).
The deputies’ testimony was not relevant to show Chapman’s motive for or intent to murder Elliff. The trial court exceeded its discretion in admitting the evidence.
B.
Even if the testimony from the.deputies had been relevant and admissible as evidence of motive[5] or intent rather than simply being inadmissible character evidence, I would still hold that the trial court erred, to reversal when it admitted that evidence because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. Rule 403, Ala. R. Evid.
“ ‘ “Judicial inquiry does not end with a determination that the evidence of another crime is relevant and probative of a necessary element of the charged offense. It does not suffice simply to see if the evidence is capable of being fitted within an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the" government’s case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects.”’ Averette v. State, 469 So.2d 1371, 1374 (Ala.Crim.App.1985), quoting United States v. Turquitt, [557 F.2d 464] at 468-69 [(5th Cir.1977) ].”
Ex parte Jackson, 33 So.3d 1279, 1284-85 (Ala.2009) (quoting Robinson v. State, 528 So.2d 343, 347 (Ala.Crim.App.1986)).
The testimony was not reasonably necessary to the State’s case, and it was not relevant, plain, clear, or conclusive. The State acknowledged in its brief to this Court that the evidence was not reasonably necessary to its case:
“In the end, the evidence against Chapman, even without the testimony of the officers who responded to the domestic violence/domestic disturbance calls Jonathan made, was strong enough to show that Chapman was angry with Jonathan and had been for some time, that she was angry enough to kill him, that she pointed a knife at him, that she killed him with a knife, and that she lied to Investigator Campos because she *341 knew that her conduct was not justified.”
(State’s brief, at p. 42.) (Emphasis added.) The State also acknowledged in its brief that the evidence was not conclusive: “[T]he State presented no evidence of any real acts of violence Chapman- may have committed against Jonathan.... ” (State’s brief, at p. 36.) Therefore, by the State’s own admission, even if the evidence had been relevant to prove motive- or intent, its probative value did not outweigh its potential prejudicial effects.
C.
The majority states:
"‘Furthermore, any prejudice resulting from the evidence of the acts and threats was minimized by the circuit court’s limiting instructions to the jury regarding the consideration of the collateral acts. The jury is presumed to follow the circuit court’s instructions. Therefore, the danger of unfair prejudice did not substantially outweigh the probative value of the evidence.”
196 So.3d at 331.
I disagree. The circuit court’s instructions were inconsistent, and they actually created additional prejudice. Before the five deputies testified, the circuit court instructed the jury that it was allowed to consider the testimony of the deputies only to determine Chapman’s motive and/or intent. During its jury charge, however, the circuit court stated:
“During the trial, you heard evidence about prior law-enforcement calls involving the Defendant and the victim. As I instructed you immediately prior to the offering of such evidence, you may consider these prior events^ solely in determining the Defendant’s motive, intent and/or whether the Defendant was the initial' aggressor on the occasion in question.”
(R. 433.) (Emphasis added.)
The instructions in the final jury charge permitted the jury to use the domestic-violence calls in exactly the manner prohibited- by Rule 404(b) — as proof that Chapman had not acted in self-defense but had acted as the initial aggressor and had intentionally murdered-Elliff. As the majority correctly notes, it is presumed that the jury follows a court’s instructions. In this case, -that presumption created another layer of error and now provides an additional reason that Chapman’s conviction must be reversed.
D.
Finally, the majority states that, even if the circuit court erred when it admitted the testimony, the error was harmless because, it says, the evidence- against .Chapman was so overwhelming. In support of this argument the majority states that El-liff told officers that Chapman had stabbed •him while he was lying on the couch and that Tonya Kilmeyer, a friend of Chapman’s, testified that Chapman had been angry with Elliff and had threatened him with a knife on the night of his death.
Chapman, herself, testified that she had been angry with Elliff before he left the house and that they had argued about money. She also admitted that she stabbed Elliff, although she testified that she did so in self-defense. As for the majority’s reference to Kilmeyer’s testimony about Chapman threatening Elliff with a knife, the record reflects that Kilmeyer testified that she was with Elliff and Chapman in the kitchen when Elliff told Chapman he was going to leave her. Kilmeyer testified that Chapman picked up a knife and pointed it at' Elliff, then stabbed the knife blade into the kitchen countertop and told him to leave. To the extent the ma *342 jority’s reference to Kilmeyer’s testimony implied that Chapman had pointed the knife at Elliff and threatened to kill him, the evidence does not support that implication. The State’s evidence of guilt was not overwhelming.
Furthermore, the State presented evidence that Elliff had been convicted of domestic-violence assault, manufacturing of methamphetamine, and possession of marijuana and cocaine and that he had ingested alcohol and cocaine within hours before he was killed. Chapman testified that Elliff became mean and violent after he used cocaine. Based on the totality of the evidence, the erroneous admission of the improper character evidence probably injuriously affected Chapman’s substantial rights. Rule 45, Ala. R.App. P. It is not clear that the jury would have returned a guilty verdict if it had not heard the five deputies testify that they responded to domestic-violence calls placed by Elliff in the year before his death.
For all of the foregoing reasons, I dissent.

. Even if the State proved'that Chapman had •engaged in prior "acts of hostility” toward Elliff, the majority- does not show how those acts -established a motive for her to commit the, now charged-murder.